UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL SUN, a California Corporation ) | Case No.: 10-CV-4567-LHK |
| ) | |
| Plaintiff, ) | |
| v. ) | ORDER GRANTING DEFENDANT'S |
| ) | MOTION TO DISMISS WITH LEAVE |
| THE TORO COMPANY, a Delaware ) | TO AMEND |
| Corporation ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Digital Sun Corporation (Digital Sun) brings suit against Defendant Toro Company (Toro) seeking damages for antitrust violations, fraud, and unfair competition. Toro moves to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (*See* Dkt. No. 21, Mot.). Pursuant to Local Civil Rule 7-1(b), the Court concludes that this motion is appropriate for determination without oral argument and VACATES the motion hearing scheduled for May 5, 2011. Based on the parties' stipulation requesting a continuance of the May 5, 2011 case management conference, the case management conference is continued to Wednesday, June 8 at 2 p.m. For the reasons set forth below, Toro's motion to dismiss is GRANTED with leave to amend.

I.   BACKGROUND

Digital Sun began selling its S Sense wireless sprinkler system in 2003. Compl. ¶ 15. The S Sense system utilized wireless sensors to activate a watering system based on the dampness of

1

Case No.: 10-cv-04567
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

1  the soil. Compl. ¶¶ 14-16. Digital Sun claims that the S Sense system significantly improves the
2  efficiency of landscape irrigation by watering only when necessary, thereby reducing water waste.
3  *Id*. Digital Sun has applied for or obtained patents on the technology embodied in the S Sense
4  system. Compl. ¶¶ 16, 22. Toro, a leading international provider of turf, landscape, and irrigation
5  equipment, contacted Digital Sun in 2003 regarding its S Sense technology. Compl. ¶¶ 1, 17. In
6  2004, Toro and Digital Sun entered into negotiations regarding acquisition of Digital Sun by Toro.
7  Compl. ¶ 18. A Letter of Interest ("LOI")[1] was executed regarding this potential acquisition, which
8  required exclusive negotiations between Toro and Digital Sun for three months, with
9
10
11
12  the loan was to be repaid by March 1, 2005.[2] *See* Dkt.
13  No. 21 (Defs.' Req.for Judicial Notice (RJN)), Ex. 1 at 1, Ex. A. A second LOI extended the
14  period of negotiation to May 31, 2005,
15
16  . This loan was to be repaid by December 1, 2005.
17  . If Toro did
18  not purchase Digital Sun, all of the loans were to be repaid by December 1, 2005. RJN, Ex. 2.
19  Toro terminated the LOI. Compl. ¶ 19.
20      On May 17, 2006, Digital Sun and Toro entered into a Manufacture, Design and Supply
21  Agreement ("MSA"). Compl. ¶ 21. Under the MSA, Toro gained exclusive rights to sell Digital
22  Sun's products through five major home improvement retailers. RJN, Ex. 3. In exchange, Toro
23  paid Digital Sun
24  .
25  *Id.* The MSA included a product specification which Digital Sun's product did not meet until the

---

[1] The parties executed letters designated as letters of interest and letters of intent; both are referenced as LOIs.
[2] Information designated confidential by the parties and filed under seal pursuant to Court Order has been redacted from this opinion.

2
Case No.: 10-cv-04567
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

**United States District Court**
For the Northern District of California

1  summer of 2008.  Compl. ¶ 24.  Meanwhile, Digital Sun was in default of its loans from Toro.
2  Compl. ¶ 22.  The parties entered into a license agreement on December 4, 2007, granting Toro an
3  exclusive license to Digital Sun's patents in the golf and sports fields of use in exchange for the
4  cancellation of Digital Sun's debt to Toro.  RJN, Ex. 4.  Shortly thereafter, Toro acquired a
5  company named Turf Guard, which also manufactured wireless soil moisture sensors.  Compl. ¶
6  23.  On December 23, 2009, Digital Sun and Toro entered into another license agreement granting
7  Toro a nonexclusive license to Digital Sun's patents in all fields of use other than the golf and
8  sports fields ████████████████████████████████████.  RJN, Ex. 8.  Between 2009 and
9  2010, after Toro conducted field tests on Digital Sun's recently completed S Sense product, the
10  parties negotiated twice regarding acquisition of Digital Sun by Toro.  Compl. ¶ 26; RJN, Ex. 5;
11  RJN, Ex. 7.  However, these negotiations were both terminated by Toro.  Compl. ¶¶ 28-31.  Digital
12  Sun filed its complaint on October 8, 2010 alleging antitrust violations, fraud, and unfair
13  competition.

14  II.      LEGAL STANDARDS

15  A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal
16  sufficiency of a complaint.  To withstand a motion to dismiss, a plaintiff must "plead enough facts
17  to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555
18  (2007).  "On a motion to dismiss in an antitrust case, a court must determine whether an antitrust
19  claim is 'plausible' in light of basic economic principles." *Coalition for ICANN Transparency,*
20  *Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).  All
21  allegations of material fact are taken as true and interpreted in a manner most favorable to the non-
22  moving party.  *Simon v. Hartford Life and Accident Ins. Co.*, 546 F.3d 661, 664 (9th Cir. 2008).
23  However, the court is not required to accept as true "allegations that are merely conclusory,
24  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536
25  F.3d 1049, 1055 (9th Cir. 2008).  Leave to amend should be granted unless it is clear that the
26  complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248
27  (9th Cir. 1995).  If amendment would be futile, a dismissal may be ordered with prejudice.  *Dumas*
28  *v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

III.   ANALYSIS

    a.   Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider "material which is properly submitted as part of the complaint." *Id.* at 688 (internal quotations omitted). Such consideration may extend to documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998) (internal quotation marks omitted), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

Here, Toro requests that the Court take judicial notice of: (1) Parties' executed Letter of Interest dated December 22, 2004; (2) Parties' executed Letter of Interest dated April 12, 2005; (3) Parties' executed Design, Manufacture, and Supply Agreement dated May 17, 2006; (4) Parties' executed License Agreement dated December 4, 2007; (5) Parties' executed Letter of Intent dated October 27, 2009; (6) termination letter from Toro to Digital Sun; (7) Parties' executed Letter of Intent dated December 8, 2009; (8) Parties' executed License Agreement dated December 23, 2009. Plaintiff's Opposition to the Motion cites to each of these documents (attached to Toro's Request for Judicial Notice). The contents of these documents are alleged in the complaint and neither party questions the authenticity of these documents. Accordingly, the Court GRANTS Toro's request for judicial notice.

    b.   Asserted Claims

Digital Sun asserts claims of attempted monopolization under the Sherman Act, 15 U.S.C. § 2 *et seq*, unfair competition under Cal. Bus. & Prof. Code § 17200, and fraud. Toro has moved to dismiss all of the claims for failure to state a claim. Specifically, Toro argues that Digital Sun has not adequately pled that Toro's actions constitute "anticompetitive conduct," and that Digital Sun has failed to meet the pleading requirements of Fed. R. Civ. P. 9(b) for fraud.

i. Attempted Monopolization Under Section 2 of the Sherman Act

To succeed in establishing a claim of attempted monopolization under Section 2 of the Sherman Act, a plaintiff must show: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996). In addition, all Section 2 claims require the plaintiff to adequately plead that the defendant has market power in the relevant market. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008).

1. Market power

Digital Sun alleges that the relevant market is "wireless sensor sprinkler systems that have characteristics and uses which are not reasonably interchangeable with wired or other kinds of sprinkler systems." Compl. ¶ 11. As Toro points out in its Motion, Digital Sun does not allege that Toro possesses or is in danger of possessing power in this market. For example, Digital Sun does not make any allegations regarding Toro's share of the relevant market. *See Rick-Mik Enters. v. Equilon Enters., LLC,* 532 F.3d 963, 972-73 (9th Cir. 2008) (finding allegations of market power insufficient where plaintiff failed to plead any facts relating to "the amount of power or control" in the relevant market). Nor does Digital Sun allege sufficient facts supporting an inference that Toro possesses such power. Digital Sun's allegations all revolve around Toro's acquisition of a "patent monopoly on the S Sense technology." Compl. ¶ 36. But, as discussed below, such a monopoly is not sufficient to state an antitrust violation. Thus, the Court finds that Digital Sun has not sufficiently alleged market power in the relevant market. This failure alone is grounds for dismissal of the Section 2 claim. *Rick-Mik*, 532 F.3d at 972.

2. Predatory or anticompetitive conduct and a dangerous probability of success

In support of its claim, Digital Sun alleges that Toro has attempted to monopolize the market for wireless sensor sprinkler systems by acquiring Digital Sun's patents and patent applications. Compl. ¶ 34-36. With respect to claims of patent-based monopolization, "where a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot

5
Case No.: 10-cv-04567
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

trigger any liability under the antitrust laws." *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1216 (9th Cir. 1997) (citing *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195 (2d Cir. 1981). The transfer of a valid patent "has no antitrust significance," but merely shifts a lawful monopoly to different hands." *See Brunswick Corp. v. Riegel Textile Corp.,* 752 F.2d 261, 266 (7th Cir. 1984) (holding that no harm to competition resulted when one rival applicant obtained a valid patent monopoly rather than another because the patent monopoly would exist either way); *see also Columbia River People's Util. Dist. v. Portland Gen. Elec. Co.,* 217 F.3d 1187, 1190-91 (9th Cir. 2000) (citing *Brunswick* favorably on this point and holding that determining which party would be a state-approved monopolist for an electrical plant had no antitrust significance because the monopoly would exist either way). Importantly, Digital Sun acknowledges that Toro did not acquire Digital Sun's patent rights in their entirety. Opp'n at 5, 7. Rather, Toro only received an exclusive license within the golf and sports fields of use, and a non-exclusive license in all other fields of use. *Id.* at 7. Thus, the present facts do not rise to the level of antitrust activity considered in either *Brunswick* or *Columbia River*. While Digital Sun is replaced by Toro as the patent monopolist in the golf and sports fields of use, the license agreements actually create an additional competitor, namely Toro, in all other fields of use. Consequently, with respect to patent licensing, Plaintiff has failed to plead anticompetitive conduct adequately.

3. Anticompetitive injury

An attempted monopolization claim also requires a showing of anticompetitive injury. The Ninth Circuit has established a four-part definition of antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999). In practice, then, plaintiff must show how defendant's anticompetitive conduct harms both competition and plaintiff. "The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself . . . Thus, this Court and other courts have been careful to avoid constructions of § 2 which might chill competition, rather than foster it." *Spectrum Sports v. McQuillan,* 506 U.S. 447, 457 (1993).

1     Digital Sun argues that Toro's conduct should be analyzed as a whole in finding

2  anticompetitive conduct. The heart of Digital Sun's argument is that Toro's repeated negotiations

3  with Digital Sun were an attempt by Toro to secure for itself a monopoly position in the market for

4  wireless soil sensor sprinkler systems. Digital Sun alleges that Toro engaged in a series of bad

5  faith negotiations with Digital Sun without ever intending that the negotiations would consummate

6  into a final agreement. Also, Digital Sun contends that these negotiations were an attempt to place

7  Digital Sun in Toro's debt.

8     Taking as true Digital Sun's allegation that the negotiations between Toro and Digital Sun

9  were entered into in bad faith, Digital Sun's claim of attempted monopolization remains

10 insufficient. The conditions within each LOI governing acquisition negotiations between the

11 parties involved an exclusive negotiation period, but did not prevent sales of Digital Sun's S Sense

12 product in any manner. RJN Ex. 1, Ex. 2, Ex. 5, Ex. 7. Furthermore, Digital Sun was free to

13 decline negotiations with Toro and pursue another partner. Moreover, Toro asserts, and Digital

14 Sun does not deny, that Digital Sun presently continues to sell its product on the Internet. Even

15 though Digital Sun is now excluded from selling its products in certain fields due to the exclusive

16 license to Toro, it has simply been replaced by Toro in those fields. *Columbia River*, 217 F.3d at

17 1190 ("if the plaintiff's only claim is of the nature 'I, rather than the defendant, was entitled to be

18 the monopolist of this market,' then the plaintiff is not a victim of antitrust injury.") (internal

19 citations omitted). In its Opposition, Digital Sun argues that Toro's "bad faith negotiations"

20 weakened the company until it was "no longer strong enough to obtain funding from any other

21 source in order to ramp up its business. . . ." Opp'n at 17. However, as Toro points out, if Digital

22 Sun's hopes had been realized and the company had been acquired by Toro, Toro would now own

23 all of Digital Sun's patents and applications. Thus, Digital Sun has not pled facts that indicate how

24 it, or other competitors, were restricted from participating in the market through Toro's behavior.

25 Therefore, Digital Sun has failed to sufficiently allege an antitrust injury.

26                4.   Specific Intent

27    "The allegation of specific intent . . . is conclusory in the absence of anticompetitive

28 conduct from which such specific intent may be inferred." *Rutman Wine Co. v. E. & J. Gallo*

7
Case No.: 10-cv-04567
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

*Winery*, 829 F.2d 729, 735-36 (9th Cir. 1987).  Digital Sun pleads that Toro undertook its negotiations with Digital Sun "with the specific and deliberate purpose and intent of monopolizing the market for wireless sprinkler systems in the United States."  In light of the Court's conclusion that Digital Sun has not alleged sufficient facts to establish predatory or anticompetitive conduct, probability of success, or antitrust injury, the Court likewise concludes that Digital Sun's conclusory allegation regarding Toro's intentions fail.  The Court cannot infer that Toro had the requisite intent based on the other alleged facts.

Because Digital Sun has failed to plead sufficient facts to state any element of an attempted monopolization claim, the Court dismisses this claim.

### c. Unfair Competition Law

Digital Sun's third cause of action under California Business and Professions Code § 17200 (Unfair Competition Law) is based solely upon a violation of § 2 of the Sherman Act.  Because the Sherman Act violation is insufficiently pled, it follows that Digital Sun has also failed to plead any violation of the Unfair Competition Law.  See *Breakdown Services, Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1142 (C.D. Cal. 2007) ("in a case where plaintiff's § 17200 claim is predicated on antitrust violations that fail to withstand summary judgment, the § 17200 claim must also fail."); *accord Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

### d. Fraud

A complaint must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  To survive a motion to dismiss, "'allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Id*. (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

1    Here, the complaint alleges that Toro acted fraudulently because it made false

2 representations and promises when entering into the LOI agreements. Compl. ¶ 41. However, the

3 complaint does not identify any false representations that were made. Rather, the complaint states

4 in conclusory fashion that the falsity regarded representations and promises to perform each of

5 these agreements. Compl. ¶¶ 40, 41. Digital Sun elaborates that the cause of action is for

6 promissory fraud, and that Digital Sun reasonably expected that Toro would abide by its promises.

7 Opp'n at 18; Compl. ¶ 42. The complaint does not specifically identify which promises were false,

8 but Digital Sun explains that Toro is accused of violating its promise to negotiate in good faith.

9 Opp'n at 18. The only fact pled by Digital Sun to support this accusation is that the acquisition of

10 Digital Sun by Toro did not close. *See, e.g.,* Compl. ¶¶ 18, 19, 21, 27, 29; Opp'n at 12, 18.

11 However, Digital Sun does not allege that the agreements *required* the parties to consummate their

12 transaction. Rather, Toro points to a provision within each LOI explicitly stating that ▇

13 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Mot. at 21; *See*

14 *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (holding that fraud is not adequately pled if

15 a complaint sets forth "conclusory allegations of fraud . . . punctuated by a handful of neutral

16 facts.").

17    The Court finds that the elements of fraud are not sufficiently alleged. *See Twombly, 550*

18 *U.S.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative

19 level."); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible

20 claim for relief survives a motion to dismiss."). Digital Sun has failed to allege any falsity of the

21 accused representations. Indeed, Digital Sun even acknowledges that the parties "could have

22 entered into honest negotiations for Toro to acquire Digital Sun that nonetheless failed." Opp'n at

23 2.

24    IV.    CONCLUSION

25    Accordingly, the Court GRANTS Defendant's motion to dismiss all Counts of Plaintiff's

26 complaint. Because it is not clear that leave to amend would be futile, the Court grants such leave,

27 but cautions Plaintiff that the judicially-noticed documents and Plaintiff's own arguments leave the

28 Court with doubts as to whether these claims can be resurrected. Plaintiff may not add any new

9
Case No.: 10-cv-04567
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

parties or claims in any amended complaint without leave of Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.  Plaintiff shall file an amended complaint, if any, **within 21 calendar days of this Order**.

**IT IS SO ORDERED.**

Dated: March 22, 2011

_____
LUCY H. KOH
United States District Judge

Case No.: 10-cv-04567
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND